SHULMAN *v.* AETNA LIFE INS. CO.

INSURANCE—GROUP POLICY—PERMANENT AND TOTAL DISABILITY—
CARDIAC CONDITION—EVIDENCE.
   In action under a group insurance policy for permanent and total
   disability benefits alleged to be the result of a cardiac condi-
   tion, evidence presented a question of fact for circuit judge
   who tried case without a jury and was sufficient to sustain
   his finding for plaintiff.

Appeal from Wayne; Cash (Paul R.), J., presid-
ing. Submitted January 5, 1944. · (Docket No. 30,
Calendar No. 42,577.) Decided February 24, 1944.
Rehearing denied April 7, 1944.

Assumpsit by Benjamin Shulman against Aetna
Life Insurance Company on a group insurance pol-
icy. Judgment for plaintiff. Defendant appeals.
Affirmed.

*Charfoos & Gussin,* for plaintiff.

*Gerald E. Schroeder,* for defendant.

REID, J. Plaintiff brings this suit on a certificate
of insurance as a member of the Chrysler Industrial
Association, Employees Mutual Benefit Division,
providing that in the event plaintiff became per-
manently and totally disabled prior to the time the
insured became 60 years of age, the said defendant
would pay to the insured the sum of $3,000 in instal-
ments in accordance with certain settlement options

therein designated. The plaintiff further alleges and shows that on or about July 1, 1942, while so insured he became totally and permanently disabled as a result of a cardiac condition.

Defendant denies the cardiac condition and denies that plaintiff on the day alleged was totally and permanently disabled or has become such at any time before filing of suit or to the time of trial.

The issue is purely a question of fact and was tried by the circuit judge without a jury. Plaintiff was sworn as a witness and testified that in November, 1940, while he was in the line of his employment in the factory, when he used his left hand to lift a pump out of an empty barrel he suffered a sharp pain across his heart area and it made him let go immediately and he held his breath, couldn't catch his breath, for about 30 seconds, his arm fell limp at his side and he felt sick for half a minute. Just before that he had not been feeling well but stayed on his job. About two weeks later in his apartment when he walked to the back end of the building he received a sharp pain and couldn't go any farther and was exhausted. He went to bed and rested, had several attacks the next day, and the next afternoon when he started out from the apartment walking toward the back end of the building, he received a third attack but went to work. He received no medical attention or advice until he saw Dr. Walter Wilson the third week in November. It was a period of seven months before he returned to work. During this period he felt very badly. He was called back to work in the middle of June, 1942, and was given an extra heavy production job because it paid a nickel more than ordinary production. He was not given a physical examination on his return. He stayed on the job about three weeks handling heavy work. After a layoff of three weeks he thought he

would try it again and went to work and remained at his employment about a week or 10 days. Since July, 1942, he has not done any work although he tried little light tasks such as turning two screw nails into his bed post about 2½ inches long with a screw driver, which caused him to become over-exhausted. He then tried a job as an upholstery salesman, but could not continue in this employment.

All he can do for recreation is to go to a neighborhood pool room and play the game of pool. After two games he has to quit. The pain starts from both arms and goes up to the shoulder down to the arm and hand, the whole arm seems paralyzed. At times he gets pain in his right arm. Sometimes pain comes on after physical exertion. The capacity to walk is about two blocks. He cannot recall when he has had a decent night's sleep.

Dr. Walter J. Wilson, witness sworn on behalf of the plaintiff, testified that he attended the plaintiff November 22, 1940, that on the fluoroscope examination there was shown moderate enlargement of the aorta and upon listening carefully he occasionally found a murmur in the aortic area. His diagnosis was angina pectoris.

"*Q.* What were your subsequent findings after the December finding?

"*A.* The general situation was the same, as far as the history was concerned, the diagnosis was angina pectoris, and we can believe that he had continuous disability which made it unable for him to work, that he was totally disabled. * * *

"*Q.* Your recommendation to him was that he stop and take it easy?

"*A.* Take it easy and we had him rest a long time, then he tried again but every time he tried to, he found he was unable to carry on work."

On cross-examination.

"*Q*. Did you any time find congestion of his lungs?

"*A*. No.

"*Q*. Did you find enlargement of his liver?

"*A*. No.

"*Q*. Did you any time observe any edema of his ankles?

"*A*. No, sir.

"*Q*. Did you any time observe any alteration either in the rate or rhythm of the heart?

"*A*. No, his rhythm was always good, the rate hasn't been bad.

"*Q*. You have testified in reference to a permanent disability condition?

"*A*. Yes, sir.

"*Q*. Without any of the facts in this case being before you, that is, the contract itself, what do you mean in your testimony, doctor, by finding that this man is totally and permanently disabled at this time?

"*A*. What I mean is that the history, his personal history is such that gives me that impression, sir. Of course, I have not been able to follow it up. We don't go with our patients to see them at work.

"*Q*. From the very beginning you have been taking this man's word for what he has been doing and what he has not been doing and the symptoms that he has told you about?

"*A*. That is all right to a certain extent but not entirely so."

Dr. Stuart Wilson was sworn for the defendant and testified that having examined him April 26, 27, 28, 1943, he found no evidence of objective physical signs or finding of any disease of the heart or circulation. An electrocardiogram was identified as taken by him and a copy of it is attached to the record.

"*Q.* Is that cardiograph in any degree sugges-tive of posterior coronary infarction?

"*A.* There is no evidence in this electrocardiograph at present of any posterior coronary infarction and no evidence that I could see that in the past that such a thing had occurred."

Defendant's witness also testified that he found evidence of sugar diabetes and also found disease in plaintiff's left shoulder underneath the shoulder joint, a bursal sac enlarged, thickened and very tender to pressure.

For rebuttal plaintiff called two physicians who testified to examining plaintiff, finding no evidence of bursal sac, and being silent in their testimony as to cardiac condition.

The trial judge was impressed with the accuracy and fairness of the testimony given on plaintiff's behalf by Dr. Walter J. Wilson. While the showing taken in its entirety is not in the highest degree convincing, still the trial judge had better means to consider the apparent reliability of the testimony given by plaintiff, plaintiff's wife, and by his physician than this court has now the means of ascertaining the same matters from a mere printed record. Under these circumstances it is to be considered that the finding of the trial judge is based on the testimony and it will be left undisturbed.

Judgment for plaintiff is affirmed, with costs.

NORTH, C. J., and STARR, WIEST, BUTZEL, and SHARPE, JJ., concurred with REID, J.   BUSHNELL and BOYLES, JJ., concurred in the result.